UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


IN RE DIGIMARC CORPORATION　　　　　　　　Civil No. 05-1324-HA (LEAD)
DERIVATIVE LITIGATION:
　　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

---

HAGGERTY, Chief Judge:

　　　　Nominal defendant Digimarc is a publicly owned Delaware corporation with its headquarters and principal place of business in Washington County, Oregon. The individual defendants are all current or former officers or directors of Digimarc. Plaintiffs George Diaz (Diaz) and Patrick Sheehan (Sheehan) are citizens of New York and were at all material times shareholders of Digimarc. They have brought this action on behalf of Digimarc, alleging that the individual defendants breached their fiduciary duties to the company and its shareholders by issuing misleading financial statements and misrepresenting the business and prospects of the company.

Individual defendants Bruce Davis, E.K. Ranjit, Philip J. Monego, Peter W. Smith, Alty Van Luijt, Brian J. Grossi, Jim Roth, James T. Richardson, John Taysom, William A. Krepick, and Geoffrey Rhoads (Individual Defendants), are all present or former Digimarc officers or directors. They move to dismiss plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, Individual Defendants move to dismiss plaintiffs' federal claim, an alleged violation of Section 304 of the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley or Section 304) for lack of standing on grounds that there is no private cause of action for a violation of Section 304. Individual Defendants further move to dismiss plaintiffs' remaining state law claims for lack of diversity jurisdiction. For the following reasons, Individual Defendants' Motion to Dismiss is granted.

**BACKGROUND**

In September 2004, plaintiff Zucco Partners LLC filed a federal securities class action complaint in this court against Digimarc and two of the Individual Defendants, Bruce Davis (Digimarc's Chief Executive Officer), and E.K. Ranjit (Digimarc's former Chief Financial Officer). In October 2004, while this class action lawsuit was pending, Diaz and Sheehan filed two shareholder derivative complaints on behalf of Digimarc against nominal defendant Digimarc and certain Individual Defendants in the California Superior Court for San Luis Obispo County. The California court consolidated these two actions (California Action). The plaintiffs in the California Action asserted state law claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste or corporate assets, unjust enrichment, and violation of the California Corporations Code.

In November 2004, another Digimarc shareholder, Christopher Beasley (Beasley), demanded that Digimarc's Board of Directors remedy the alleged breaches of fiduciary duties described in the California Action. In response, Digimarc's Board appointed an independent Special Litigation Committee (SLC) to investigate claims asserted by Diaz, Sheehan, and Beasley. In February 2005, the SLC sent Beasley's counsel a letter inviting Beasley to participate in its investigation. In April 2005, Beasley filed a shareholder derivative action against Digimarc and several Individual Defendants in the Circuit Court of Oregon for Washington County (Beasley Action).

In July 2005, the court in the California Action granted a motion from Digimarc and the Individual Defendants staying the action on grounds that the defendants had no substantive contacts with San Luis Obispo County. The court directed Diaz and Sheehan to re-file their claims in Washington County Circuit Court.[1]

Instead, Diaz and Sheehan each filed a new shareholder derivative action in this court against Individual Defendants in August 2005, alleging that Individual Defendants' reckless mismanagement caused Digimarc to capitalize expenses, inventory, and assets improperly, resulting in a need to restate its financial results for the 2003 fiscal year and the first quarter of

---

[1]The California Court's order provided in pertinent part:

> 1. The motion is granted. These consolidated actions are hereby stayed in favor of a shareholder derivative action to be filed by plaintiffs in the Circuit Court of the State of Oregon, for the County of Washington.
>
> 2. This order is conditioned on the agreement by Digimarc and the Individual Defendants (a) to submit to the jurisdiction of the Circuit Court of the State of Oregon, for the County of Washington, in connection with a shareholder derivative action to be filed in that court by plaintiffs . . . .

Baum Decl., Ex. 5.

2004.  These Complaints also contain a claim against Individual Defendants Bruce Davis and E.K. Ranjit for disgorgement under Section 304.

**ANALYSIS**

**1.  Do plaintiffs have standing to sue under Section 304 of Sarbanes-Oxley?**

Section 304 provides for the disgorgement of bonuses and profits by certain corporate officers if the corporation is "required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws."  15 U.S.C. § 7243.  That there is no private cause of action explicitly stated in Section 304 is beyond dispute.  *See, e.g., Kogan v. Robinson*, 432 F. Supp. 2d 1075, 1078 (S.D. Cal. 2006) (citation omitted) (the court agreed with "all other courts that have considered this issue, and conclude[d] Section 304 does not explicitly create a  private remedy"); *Neer v. Pelino*, 389 F. Supp. 2d 648, 652 (E.D. Penn. 2005) (footnote omitted) ("Section 304 does not explicitly afford a private right of action").

Individual Defendants contend that because there is no private cause of action for a violation of Section 304, this court has no jurisdiction.  Accordingly, plaintiffs lack standing to assert the only federal law claim alleged in the Complaint.  *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 n.5 (1974) (no federal question jurisdiction if plaintiffs lack standing).  Plaintiffs disagree, arguing that Section 304's text, the Act's statutory construction and legislative history, and the purpose underlying Section 304 all favor finding the existence of an implied private right of action.

In *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), the Court explained that the "central inquiry" in determining whether a private remedy is implicit in a statute in which no private remedy is explicitly stated is "whether Congress intended to create, either expressly or by

implication, a private cause of action." *Id*. at 575.  Other factors, such as language and focus of the statute, its legislative history, and its purpose, are "traditionally relied upon in determining legislative intent." *Id*. at 575-76.

Every court that has considered the issue directly has concluded that Section 304 contains no implied private right of action.  *In re BISYS Group Inc. Derivative Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005) (citation omitted) ("This court holds that there is no private right of action under Section 304 of Sarbanes-Oxley"); *Kogan*, 432 F. Supp. 2d at 1076 ("Section 304 neither expressly or implicitly confers a private right of action"); *Neer*, 389 F. Supp. 2d at 657 ("In light of the text and structure of the Act and its legislative history, we find that Congress did not intend to create an implied cause of action in Section 304").

At the time that Individual Defendants' initial brief was filed, *Neer* was the most helpful authority available.  Plaintiffs neglected to cite to *BISYS* in their Response.  Subsequently *BISYS* and *Kogan* were decided in accordance with *Neer*.

In *Neer,* the Eastern District Court of Pennsylvania conducted a thorough analysis of legislative intent under the *Cort* test and concluded that Congress did not intend to create an implied cause of action in Section 304.  *Neer*, 389 F. Supp. 2d at 657.  The *Neer* court first acknowledged that although Congress had created disgorgement as a remedy that would benefit shareholders indirectly, this did not indicate an intent that the provision would be enforced through a private right of action in those shareholders.  *Id*. at 653.  The court considered the text of Section 304, the Act as a whole, and the legislative history and scheme, and concluded that there was no private right of action contained in Section 304.  *Id*.

The two other post-*Neer* published opinions on this issue have also held that Section 304 does not create a private right of action.  *BISYS*, 396 F. Supp. 2d at 464; *Kogan*, 432 F. Supp. 2d

at 1082.  This court holds that Section 304 contains neither an explicit nor an implied private cause of action for its violation.

## 2.  Is there diversity jurisdiction?

Plaintiffs Diaz and Sheehan are both citizens of New York, and assert diversity jurisdiction under 28 United States Code Section 1332, based on the fact that all individual defendants, as well as Digimarc, are citizens of Oregon.  Individual Defendants argue that diversity is destroyed when Digimarc is aligned properly as a plaintiff for purposes of diversity jurisdiction.  They rely upon *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (citing *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518. 522-23 (1947)), for the "general rule that the corporation is properly realigned as a plaintiff since it is the real party in interest" in derivative shareholder litigation.

There is a narrow exception to this general rule, pursuant to which a court may align a corporation as a defendant where the corporation is "actively antagonistic" to the derivative plaintiff.  *Duffey*, 820 F.2d at 1163 (citations omitted).  One way of determining whether such antagonism exists is asking whether there is a "real collision between the stockholder and his [or her] corporation." *See Smith v. Sperling*, 354 U.S. 91, 97-98 (1957).  Mere inaction or inability to act on the part of the corporation is insufficient.  *Duffey*, 820 F.2d at 1163.  Instead, the corporation must have either refused to take action requested by the shareholder or it must be evident that the corporation is electing to refuse to acquiesce to the shareholder's demands, despite an ability to do so.  *Id*.

Plaintiffs assert that Digimarc is actively antagonistic, placing this case within the *Duffey* exception.  Plaintiffs cite *Reilly Mortgage Group, Inc. v. Mt. Vernon Sav. & Loan Assoc.*, 568 F. Supp 1067, 1073 (E.D. Va. 1983), arguing that this court should look no further than the

Complaint to determine the presence of antagonism. Alternatively, they argue that even if the court were to look to outside factors, the exception would apply for the following reasons: (1) the SLC was established to investigate Beasley's action, not the action brought by Diaz and Sheehan; (2) presumably the SLC has decided not to pursue plaintiffs' claims; and (3) the SLC's invitation to plaintiffs to participate in its investigation fails to nullify the antagonism evident in the Complaint. Plaintiffs also contend that Digimarc's SEC filings in response to allegations against Individual Defendants belie any alleged receptivity to plaintiffs' claims or ongoing cooperation with plaintiffs.

Individual Defendants argue that this exception is inapplicable. Digimarc has never refused a demand from Diaz and Sheehan, and there is no evidence that Digimarc would have done so had Diaz and Sheehan made such a demand. Additionally, Digimarc effectively granted Beasley's demand when it appointed an independent SLC and empowered it to take "any necessary action" in investigating claims and to "determine whether or not [Digimarc] shall undertake or defend against any litigation against one or more of the present or former directors or officers of the Company." Baum Decl., Ex. 3. The SLC's findings and determinations will be "final," not subject to review by the Board of Directors, and will be "binding upon the Company." *Id*. The SLC has invited Diaz and Sheehan, as well as Beasley, to participate in their investigation. *See* Baum Decl., Ex. 4, 6-7.

The Supreme Court has rejected the formulaic use of fixed rules such as that being advanced by plaintiffs regarding this issue. *Smith*, 354 U.S. at 97. Moreover, the *Reilly* decision specifically demonstrates that it may be appropriate for the court to look at matters "beyond the complaint and answer" in determining the issue of antagonism. *Reilly*, 586 F. Supp at 1074. The court in *Reilly* considered, and ultimately relied upon, numerous facts outside the pleadings,

including how the corporation reacted to: (1) warnings from state and federal regulators; (2) the shareholders' initial attempts to remedy the perceived wrongdoing; and (3) the plaintiff's lawsuit itself. *Id*.

This court concludes that evaluating the existence of antagonism may include consideration of matters beyond the pleadings. Here, Digimarc has not only taken no action directly opposed to plaintiffs' claims, but has cooperated with plaintiffs by investigating their claims actively and inviting them to participate in that investigation. While Individual Defendants concede that the SLC's invitation to plaintiffs' counsel to attend its October meeting was extended after plaintiffs filed this lawsuit, the formation of the SLC and Beasley's initial invitation to participate in the investigation took place well before Diaz and Sheehan filed their claims in this court. The subsequent invitation to attend the October meeting is consistent with the SLC's earlier invitations.

It is also true that Digimarc stated in its SEC filings that it believed the company had substantial defenses to the parallel securities class action lawsuit. *See* Zollinger Decl., Ex. 5. However, the claims in that case are distinct. The only statement contained in Digimarc's SEC filings that is relevant here is that Digimarc "has appointed a committee to investigate the claims" made by plaintiffs in the California Action. *Id*., Ex. 5 at 2. This falls short of establishing antagonism.

This court concludes that plaintiffs have failed to demonstrate the sort of active antagonism necessary to invoke the narrow exception created by *Duffey*. Digimarc is properly realigned as a plaintiff for the purposes of this litigation. Therefore, there is no basis for diversity jurisdiction under 28 United States Code Section 1332.

Additionally, this court notes that the class action securities fraud case, *Zucco Partners,*

*LLC, et al. v. Digimarc Corp., et al.,* 2006 WL 2252557 (D. Or.), which gave rise to these derivative shareholders actions, was dismissed with prejudice on August 4, 2006. *See* Individual Defendants' Notice of Action in Related Case [33]. As plaintiffs' claims here are based in part on damage allegedly caused to Digimarc by the Individual Defendants as a result of the filing of the *Zucco Partners* case, the dismissal of the class action provides additional support for dismissal of this case.

**CONCLUSION**

Individual Defendants' Motion to Dismiss [8] plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted. Plaintiffs' federal claim, an alleged violation of Section 304, is dismissed for lack of standing on grounds that there is no private cause of action for a violation of Section 304. The remaining state law claims are dismissed because there is no basis for diversity jurisdiction. Individual Defendants are ordered to confer with all parties and submit a proposed judgment for the court's consideration by September 1, 2006.

IT IS SO ORDERED.

Dated this 11    day of August, 2006.

/s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge